OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

August 14, 2002

The Honorable Charles D. Penick
Bastrop County Criminal District Attorney
804 Pecan Street
Bastrop, Texas 78602

Opinion No. JC-0542

Re: Whether an autopsy report may be withheld from the public if a prosecutor determines that its release could hinder a murder investigation (RQ-0511-JC)

Dear Mr. Penick:

You ask if there is any provision of law that would prevent public inspection of an autopsy report held by a justice of the peace, where disclosure would hinder the investigation or prosecution of a serious offense.[1] Autopsy reports held by a justice of the peace are ordinarily subject to inspection by members of the public pursuant to Government Code section 27.004, and no statute expressly excepts these documents from disclosure to the public. However, you might find the relief you seek by securing a court order requiring the autopsy report to be withheld from public inspection to prevent hindrance of the investigation and prosecution of the murder.

You state that a murder was committed in the City of Bastrop and an autopsy was performed on the victim in connection with an inquest by the justice of the peace into the death. *See* Request Letter, *supra* note 1, at 1. The autopsy report, which is held by the justice of the peace, reflects details of the crime that are unknown to the general public, and the Bastrop Police Department and your office wish to prevent public disclosure of the report so it can be used to identify false confessions and aid in investigating the murder. *See id.* A member of the media has requested access to the autopsy report. *See id.*

The records of a justice of the peace are records of a court, and therefore are not subject to the Public Information Act or to its exceptions from disclosure to the public. *See* TEX. GOV'T CODE ANN. §§ 552.003(1)(B), .0035, .108(a) (Vernon Supp. 2002) (exception for information held by law enforcement agency or prosecutor if release would interfere with detection, investigation, or prosecution of crime). The records of the justice's office have long been held to be available for public inspection under section 27.004 of the Government Code, which provides in part:

---

[1]Letter from Honorable Charles D. Penick, Bastrop County Criminal District Attorney, to Honorable John Cornyn, Texas Attorney General (Feb. 11, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

> (a) Each justice shall arrange and safely keep all dockets, books, and papers transmitted to the justice by the justice's predecessors in office, and all papers filed in a case in justice court, subject to the inspection of any interested party at reasonable times.

*Id.* § 27.004(a) (Vernon 1988). *See* Tex. Att'y Gen. Op. No. JC-0422 (2001); Tex. Att'y Gen. ORD-25 (1974) (construing prior codification of Government Code section 27.004). You ask if there is an exception to Government Code section 27.004, or if other relief is available, when the disclosure of an autopsy report held by the justice of the peace will hinder the investigation or prosecution of a serious offense. *See* Request Letter, *supra* note 1, at 1.

We consider whether chapter 49 of the Code of Criminal Procedure, which governs inquests upon dead bodies, includes provisions making autopsy reports confidential. Inquests are conducted by a justice of the peace pursuant to subchapter A, chapter 49, Code of Criminal Procedure, unless the county has established the office of medical examiner. *See* TEX. CODE CRIM. PROC. ANN. arts. 49.02, .04, .25 (Vernon Supp. 2002); *see also* Act of Apr. 21, 1955, 54th Leg., R.S., ch. 159, § 14, 1955 Tex. Gen. Laws 524, 527 (authorizing counties of at least 250,000 population to appoint medical examiner). The commissioners court of any county of more than 1,000,000 population that does not have a "reputable medical school" as defined by statute "shall establish and maintain the office of medical examiner," while the commissioners court of any county may do so. *See* TEX. CODE CRIM. PROC. ANN. art. 49.25, § 1 (Vernon Supp. 2002). *See id.* art. 49.25, § 1-a (Vernon 1979) (creation of multi-county medical examiners district by two or more counties). When the county establishes the office of medical examiner, "all powers and duties of justices of the peace in such county relating to the investigation of deaths and inquests shall vest in the office of the medical examiner." *Id.* art. 49.25, § 12. The medical examiner or his duly authorized deputy may hold inquests pursuant to chapter 49, subchapter B of the Code of Criminal Procedure. *See id.* art. 49.25 (Vernon 1979 & Supp. 2002).

Because Bastrop County does not have a medical examiner's office, the inquest in this case was conducted by a justice of the peace. *See* Request Letter, *supra* note 1, at 1. A justice of the peace "shall conduct an inquest into the death of a person who dies in the county served by the justice" if "the circumstances of the death indicate that the death may have been caused by unlawful means." TEX. CODE CRIM. PROC. ANN. art. 49.04(a)(4) (Vernon Supp. 2002). An inquest is "an investigation into the cause and circumstances of the death of a person, and a determination, made with or without a formal court hearing, as to whether the death was caused by an unlawful act or omission." *Id.* art. 49.01(2). The purpose of an inquest hearing is to determine whether the death of a person resulted from a crime, and if so, to obtain evidence to form the basis of a criminal prosecution. See *id.* art. 49.01(3); *see also Parsons v. State*, 271 S.W.2d 643, 651 (Tex. Crim. App. 1953) (describing duties of justice of the peace acting as coroner). A justice "shall order an autopsy performed on a body" if necessary to determine or confirm the nature and cause of death, if "directed to do so by the district attorney, criminal district attorney, or, if there is no district or criminal district attorney, the county attorney," or under certain circumstances indicating neglect or abuse of a child. TEX. CODE CRIM. PROC. ANN. art. 49.10(e)(2)-(3) (Vernon Supp. 2002). The justice of the peace

"shall request a physician to perform the autopsy," and the commissioners court shall pay a reasonable fee to the physician. *See id.* art. 49.10(f)-(g). The autopsy in this case was performed by the Travis County Medical Examiner's office. *See* Request Letter, *supra* note 1, at 1.

Article 49.15 requires the justice of the peace to make an inquest record for each inquest he conducts. TEX. CODE CRIM. PROC. ANN. art. 49.15(a) (Vernon Supp. 2002). "The inquest record must include a report of the events, proceedings, findings, and conclusions of the inquest." *Id.* It must also include "any autopsy prepared in the case and all other papers of the case." *Id.* "All papers of the inquest record must be marked with the case number and be clearly indexed and be maintained in the office of the justice of the peace and be made available to the appropriate officials upon request." *Id.* If an inquest hearing was conducted, the record of the hearing is part of the inquest record. *See id.* art. 49.15(b); *see also id.* art. 49.15(b)(1)-(9) (content of inquest hearing records). The justice of the peace "shall certify a copy of the inquest summary report and deliver the certified copy in a sealed envelope to the clerk of the district court," who "shall retain the summary report subject to an order by the district court." *Id.* art. 49.15(d).

We first consider whether article 49.15(d) of the Code of Criminal Procedure implicitly makes the autopsy report confidential. Article 49.15(d) requires the justice of the peace to certify a copy of "the inquest summary report" and "deliver the certified copy in a sealed envelope to the clerk of the district court." *Id.* While the statute does not describe the content of the "inquest summary report," we will assume that it includes the autopsy report or at least a summary of it.

Under some circumstances, a record is sealed to make it confidential. *See* TEX. FAM. CODE ANN. § 58.003 (Vernon Supp. 2002) (records of juvenile court proceedings). However, our review of article 49.15(d) shows that it uses the term "sealed envelope" for a different purpose and that it does not mean that the inquest summary report is confidential.

We first point out that the substance of article 49.15(d) has been part of Texas law for a considerable time. Its precursor dates from 1887, when it read as follows:

> [T]he justice before whom the . . . [inquest] was held shall certify to the proceedings, and shall enclose in an envelope the testimony taken, the finding of the justice, the bail bonds if any, and all other papers connected with the inquest, and shall seal up such envelope and deliver it, properly indorsed, to the clerk of the district court . . . who shall safely keep the same in his office subject to the order of the court.

*See* Act of Mar. 17, 1887, 20th Leg., R.S., ch. 45, § 1, 1887 Tex. Gen. Laws 31, 32.

The purpose of the article 49.15(d) requirement that the justice deliver the inquest summary report in a sealed envelope becomes apparent when it is seen in its historical and statutory context. A primary reason for holding an inquest is to gather evidence about a possible crime. The justice

has a duty to "preserve all tangible evidence" accumulated in the course of an inquest "that tends to show the real cause of death or identify the person who caused the death" and to deposit this evidence with the appropriate law enforcement agency "to be stored in the agency's property room for safekeeping" or "deliver the evidence to the district clerk for safekeeping subject to the order of the court." TEX. CODE CRIM. PROC. ANN. art. 49.17 (Vernon Supp. 2002). Section 49.15(d), like article 49.17, provides for the recordation, preservation and authenticity of evidence. The requirement that the justice certify the inquest summary report and deliver it in a sealed envelope helps ensure that a complete and accurate record will reach the district clerk.

Similar statutes have been read as providing for the preservation and authenticity of court records. For example, article 17.30 of the Code of Criminal Procedure requires the magistrate in an examining trial to "certify to all the proceedings had before him . . . and transmit them, sealed up, to the court before which the defendant may be tried, writing his name across the seals of the envelope." *Id.* art. 17.30 (Vernon 1977). The court in *Duncan v. State* wrote about the predecessor of article 17.30 that "[t]he purpose of this statute is that these records may be preserved for use by the grand jury and the prosecuting officers." *Duncan v. State*, 279 S.W. 457 (Tex. Crim. App. 1925) (considering effect of magistrate's failure "to certify, seal, and deliver to the clerk of the court" the examining court proceedings as required by former Code of Criminal Procedure article 347 (1911)). *See also* Tex. Att'y Gen. Op. No. C-177 (1963) (district clerk must keep safely the proceedings received from magistrate who holds examining trials, but may not deny district attorney access to those records). The Supreme Court of Washington, addressing a statute that required depositions to be enclosed "in a sealed envelope" and delivered to the court, asked whether appellant's failure to enclose a deposition in a sealed envelope "was such a fatal irregularity as to destroy its value as evidence." *Kirkpatrick v. Dep't of Labor and Indus.*, 290 P.2d 979, 980 (Wash. 1955). "[I]n the absence of any evidence of tampering or alteration," this mistake did not warrant suppression of the deposition. *Id.; see also Travers v. Jennings*, 17 S.E. 849, 850 (S.C. 1893) (notary shows that deposition sent to court in sealed envelope is his work by using sealing wax stamped with notarial seal, writing his name across envelope, or writing name across the flap of envelope after sealing it). We conclude that section 49.15(d) requires the inquest summary report to be sealed in an envelope to protect the authenticity of the evidence, not to make it confidential.

We also consider whether article 49.15(a) of the Code of Criminal Procedure provides confidentiality for the inquest records held by the justice of the peace. This provision states that "[a]ll papers of the inquest record must . . . be made available to the appropriate officials upon request." *See* TEX. CODE CRIM. PROC. ANN. art. 49.15(a) (Vernon Supp. 2002). This language could suggest that the papers are available only to the appropriate officials and not to the general public. On the other hand, this provision could be intended to insure that the justice of the peace would provide "appropriate officials" access to the records without cutting off any rights of public access provided by another statute, specifically section 27.004 of the Government Code. *Cf.* Tex. Att'y Gen. Op. No. C-177 (1963) (district clerk may not deny district attorney access to records of examining trials).

Legislative history supports the conclusion that section 49.15(a) does not make the inquest report confidential to everyone but "appropriate public officials." The language regarding the availability of inquest papers to the appropriate officials was adopted in 1987, in a "systematic revision of the state's inquest and autopsy procedures." HOUSE CRIM. JURISPRUDENCE COMM., BILL ANALYSIS, Tex. C.S.H.B. 1104, 70th Leg., R.S. (1987). The committee's substitute for House Bill 1104 was described as a "non-substantive clean-up bill." HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. C.S.H.B. 1104, 70th Leg., R.S. (1987). The bill made the duties of the justice of the peace clearer and gave that officer additional powers. *See id.* There was no indication in the bill analyses that the bill would affect public access to records of autopsies prepared for inquests.

Section 49.15(a) and (d) may be compared with section 49.18(b) of the Code of Criminal Procedure, which requires the investigation of the death of a person in the custody of a peace officer or confined in a jail or prison. TEX. CODE CRIM. PROC. ANN. § 49.18(b) (Vernon Supp. 2002). The director of the law enforcement agency to which the peace officer belongs or of the facility in which the prisoner was confined must investigate the death and file a written report of the cause of death with the attorney general. *See id.* "The attorney general shall make the report, with the exception of any portion of the report that the attorney general determines is privileged, available to any interested person." *Id.* Section 49.18(b) explicitly provides that the attorney general may determine that portions of the report are privileged and withhold them from the public. *See* Tex. Att'y Gen. ORD-521 (1989) (Part I on reporting form devised by office of attorney general is open; Parts II through V are privileged). Section 49.15(a) and (d), in contrast to section 49.18(b), does not expressly make inquest records confidential.

We find no provision in chapter 49 of the Code of Criminal Procedure that authorizes the justice of the peace to withhold an autopsy report from public inspection, and we have not found any other statute that would except the autopsy report from inspection under Government Code section 27.004 when disclosure to the public will hinder the investigation or prosecution of a serious offense. We understand, however, that some public entities have found judicial relief in circumstances similar to those of the present case. *See* Tex. Att'y Gen. ORD-389 (1983) (report of police investigation, which included an autopsy report, was subject to protective order). Accordingly, you might find the relief you seek by securing a court order requiring the autopsy report to be withheld from public inspection to prevent hindrance of the investigation and prosecution of the murder.

## S U M M A R Y

An autopsy report prepared in connection with an inquest by a justice of the peace into a murder may be inspected by the public pursuant to section 27.004 of the Government Code. Chapter 49 of the Code of Criminal Procedure, which governs inquests, does not provide confidentiality for records of an inquest conducted by a justice of the peace, or for an autopsy report prepared as part of the inquest. We find no statute that would except such an autopsy report from public inspection under Government Code section 27.004. However, should the district attorney's office or the police department wish to prohibit public disclosure of an autopsy report to prevent hindrance of the investigation and prosecution of a murder, it might find relief by securing a court order requiring the autopsy report in the justice's custody to be withheld from public inspection.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee